Please the court and counsel. Peter Schwede, I represent Stephen Randock. Philip Wetzel represents Dixie Randock. I intend to use approximately six minutes and we would like to reserve one minute for rebuttal. In this case, Mr. Randock is presenting two issues. One is whether the loss was properly calculated and two whether his extraordinary physical condition warrants home detention. The court found that used gain in lieu of loss in this case because the plea agreement indicated that six million dollars worth of diplomas were sold. The defendants ran an online university and granted diplomas on the basis of life experiences. The novel approach to granting. Certainly. And maybe in its day. Yes, it is, Your Honor. But there was no law against doing that. I didn't say there was. I just said it was a novel approach. The the court can use gain as an alternative measure of loss if there is a loss, but it cannot be reasonably determined. And they admit that there was a loss. No, Your Honor. They did. We know, in fact, in paragraph 11 C of the plea agreement, we agreed that we were going to dispute the loss. I would say this. No, not that I understood you were going to dispute the amount of the loss. Correct. But you acknowledge that there was a loss. There is no evidence of loss, Your Honor. In this case, the district court found there was a loss. Correct. But the district court never identified any victim. There's no no name of any victim was ever identified by the court. The court never determined that there was any loss to any victim. And those are I would submit a predicate to finding that there's a loss. So your whole theory here about the amount of loss all turned on the people who bought these degrees off. From this university knowingly knew what they were getting. Exactly. Therefore, they put up this money and they knew they were getting nothing for what they put up their money. Exactly. And the court and constitute a loss. Pardon. And that's not a loss. No. No. Because if it's an arm's length transaction, I mean, if you know if you go to get a life experience degree, you know, you're not going to any classes. You know, you're paying for something that if you wanted to investigate where St. Regis University was, you're not going to find it. And what do you think the people that bought these degrees intended to do with them? That's a good question. They some of them were looking for some kind of significance as far as their life experiences go. I think David might have presented them to prospective employers. It's possible. But there again, Your Honor, there's no evidence of that. There's no evidence of any. The problem I see that you have is that the district court made a factual finding that there was a loss. And he determined the amount that was not possible to calculate the amount of loss. And so then he used the alternative. And I, you know, I failed to see why that is a clearly erroneous finding on his part. Well, I think it's pointed up by the court's colloquy with Mr. Wetzel. The Mr. Wetzel was trying to make the point that we didn't agree to the amount of the loss being six million dollars or less than seven million dollars. And that all the defendants disputed the amount of the loss. And the trial judge stated, quote, given the way these plea agreements were put together, the court has to consider your argument and take into effect the fact that there are some victims, alleged victims, who do not feel defrauded. The plea, however, was to mail fraud. And Mr. Wetzel says, yes, the court continues. In these cases, I am not sure that certainly it would be an equitable circumstance and must be considered if it turns out that the loss was, for example, 10,000. Let me ask you a question. What kind of bothered me about this whole thing was the parties agreed to a certain amount of time, correct? And the question is whether or not it was going to be served in custody or out of custody. Is that right? Yes. And I gather that the whole fuss about the amount of loss was if the amount of loss was less, was a lower amount, a small amount of loss, that that would give the district court judge, entice him perhaps to impose a non-custody sentence. Is that the whole theory? Yes. And as the trial judge said. But as I understand it, the guideline calculation in this particular kind of setting really has little force. He agreed. He was willing to impose a 24-year month. What was it? Three years. Three years. 36 months. And the whole question was for him to decide, was it going to be in custody or was it going to be out of custody? Correct. That's what you agreed to. Correct. And he decided it was going to be in custody. Now, he could have found, suppose he had found that there was no loss. Do you think he could have still said 36 months in custody? Yes, but. So what's the fuss? Well, because he said that, he admits, he says on the record that certainly it would be in equitable circumstance if the loss was less. And then goes on and says that the loss is high. So here he has the discretion, and if he's going to exercise the discretion, discretion is discretion. If we were dealing about three years in prison, period, there would be no, we wouldn't be. You know, I failed to see, though, with 36 months and the discretion given to the judge about whether it was going to be in custody or out of custody, he could say, well, okay, you know, you can't really determine what the amount of loss here. But nonetheless, I think this is a significantly serious offense. You know, it was massive. It was extensive. And I just, you know, for purposes of deterrence, you're going to, you're going into custody. And I would agree with Your Honor. The way I read that agreement, he had discretion to do that. He did have discretion to do that. But we're talking about the exercise of discretion, and we learn from Booker and his progeny. That gets into a different area. Well, no, it doesn't, because here you're talking about basically the same thing. 3553A factors. Correct. And I think the guidelines are not bounding. Well, I want to, you know, as I understand it, the loss, we have a situation where we can use a gain if we can't determine the loss. And it's my understanding that the defendant told the judge the number of victims is unidentifiable here. The situation that they're in is unidentifiable. Restitution is not practicable. Calculation would be complicated and prolong the process. All of those arguments made by the defendant, all to say the loss is unable to be determined, so we can't have a restitution, and now we come back and argue that you can't go to gain. How can that be? Your Honor, I'm running out of time here, and I do want to give Mr. Wetzel's. Well, I can understand you running out of time, because that is a tough question. If you're going to argue to the poor DJ, he can't determine restitution, because it's hard to find the loss. Can't find the victims. Don't know who they are. They're unidentifiable. No way to find what restitution is. The whole thing would complicate and prolong the process. But don't say that gain should be used, because loss can be determined. But the thing is is that if you have people that thought that they were, people that believed that they weren't defrauded, and you might have a subset of people that believes they were defrauded, you have to identify somebody that feels that they were defrauded. Why did you say that? Because you have to, because in order to have a victim, you have to have someone that's separate from the actual loss. Do you think there were any victims here? I don't know. There's no evidence of that. The record is devoid of that. Maybe you should give your colleague a chance to talk about Mrs. Randach's situation. Thank you. Thank you, Your Honors. Mrs. Randach had the same plea agreement. She was given 240 hours community service work, which was not included in the plea agreement. You didn't object to that term before the district court, did you? I did not object to it. But let me tell you what the chronology was. That means that you're up here on plein air review. Well, let me, if I can explain what the chronology was. Isn't that right? I mean, you didn't object. I read the transcript. I didn't object to a probation officer's suggestion of a supervised release condition. When the district court judge said impose the 24, whatever it was, how many? 40 hours. 40 hours, whatever it was. 240 hours. 240 hours of community service. When he imposed that, I didn't hear, I didn't read where you said, Your Honor, that's not part of the agreement, and I object. I did not object. I didn't even see where you said. And that violates my Rule 11 agreement, Judge. And if you're going to impose that, guess what? I don't have to go through with this agreement. I can withdraw my plea. I can withdraw my plea right here. Well, what happened? And as I understand it, the language of what you have here doesn't say that you don't get 240 hours. All it says is these are the specific or the special conditions of probation we recommend, and the judge can give any of the standard conditions he wants to give. Now, who says that community service isn't a standard condition? The probation officer. Do you have any law that says 240 hours of community service is not a standard probation condition? When the probation officer listed these conditions in different sections, the 240 hours was listed as a suggested special condition. So your plea agreement, as I read it, said they could give all the standard conditions of probation, plus we'll agree to specific conditions. But I don't know where you're finding that that can't be a standard condition. If I look at the statute and I find mandatory conditions under the statute 3563, and then I find discretionary conditions under the statute, probation is there. And community service is there. Why isn't that a standard condition? Nobody briefed that. Nobody told me why it isn't. I mean, it's a normal condition I gave as an Idaho district judge, community service? Well, Your Honor, it was listed as a special condition. So what? It was listed. What was your plea agreement? I'm reading the plea agreement. I'm bound by the contract of the plea agreement. Who says that's not a standard condition? It wasn't listed as a standard condition, Your Honor. That's the only reason? Yes, Your Honor. Let's assume for just a moment. You're over your time, but I want to just get your response to this. Let's assume that the 240 hours of community service was not part of, you know, contrary to the terms of this express agreement that the district court agreed to when he accepted it. Yes. Okay. And you didn't object, so you're up here on plain error. So let's just say for a moment, let's just assume that it's plain error. We have discretion. You have to show that it violates your substantial rights, and then we have discretion whether or not to correct the error. Now, so my first question would be, why is this community service, why is this a violation of your client's substantial rights? And two, why should we exercise our discretion to correct it? You should exercise your discretion because what it does is it makes these 11C1C plea agreements insecure. If the probation officer, as a suggested condition, goes outside the plea agreement and the judge imposes it, the judge can't go back down and withdraw your plea. No, I don't want to do that, Your Honor. But that's the remedy, right? I would ask to go back. We would send it back to the district court judge and say, you know, you can't impose this condition, so you determine. If imposing community service is essential, then you reject the plea agreement and your client can withdraw her plea. Well. So she wants to go to trial over 240 months. No, she does not want to go to trial. What she wants is what she bargained for, which was the plea agreement that did not contain 240 hours community service work. The agreement that the judge, at the beginning of the hearing, the judge accepted. And the judge did not impose the 240 hours until at the very end of the hearing. So that's what happened. All right. Thank you. Thank you. May it please the Court, George Jacobs, on behalf of the United States Attorney's Office. Your Honors, the government's position is that the district court committed no significant procedural error in imposing the agreed-upon term of imprisonment in this case, 36 months pursuant to an 11C1C plea. The significance of the guideline calculation under this particular type of plea agreement in the post-Booker world? Your Honor, the sentence in this case emanated from the plea agreement itself. And while the court is required to consider the guidelines as a starting point, counsel even agreed that the guideline calculation in this case was going to be purely academic, given the 11C1C nature of the plea. And so, Your Honor, the guidelines, while the court under Cardi has to start with a guideline. But you're in a specific, the district court said, I agree I'm going to impose 36 months. So let's suppose the guideline calculation came out to be 48 months. Yes, Your Honor. Right? Yeah, I agree with Judge Pius. I don't understand why this whole exercise was gone through when the binding plea agreement, which the judge accepted, said 36 months. So if he planned or wanted to go through the whole guidelines calculation and do the 3553 factors and come up with a different sentence, then he would have had to say, you know, I'm not going to accept this plea agreement, you know, because I plan to impose a lengthier sentence. Yes, Your Honor. Your Honor, the United States would agree that the guideline calculation in this case was not, really didn't have to be done in the plea agreement. But it was a factor that the court is required to consider, perhaps. In what sense? Well, in this case. In deciding whether or not to accept this 11C1C1 agreement? 11C1C, Your Honor. Or in, I don't quite understand, you know, he couldn't, having accepted the agreement, he couldn't, my understanding is he couldn't impose a sentence beyond 36 months, nor could he impose a sentence less than 36 months. So was it, did he have to do the calculation to decide whether there would be home detention as opposed to incarceration? The answer to that, Your Honor, is no, because the court indicated on the record, if it had gone with the defendant's loss calculation or the government's loss calculation, the sentence it imposed would have still been the same, 36 months imprisonment. Well, let's go to this 240-hour of community service condition. I assume that the Eastern District of Washington, like most central, the central district of most district courts, do have a standard, kind of a standard set of conditions that everybody understands those are the standard set of conditions. Is that right? Yes, Your Honor. But those do not include community service, do they? They do not. Right. That is correct, Your Honor. So this was not the standard, and it's not the custom in the district courts that this would be one of the standard conditions. It's something that's beyond the standard conditions. That is correct, Your Honor, and under the statute 3563-B-12, it is a discretionary condition, and the court in- Right, right. I mean, the standard conditions are all typed up, and you just disable them to the judgment, right? Yes, Your Honor, that's correct, and that is correct, Your Honor. Okay. So what do we do with this 240 hours? I mean, it wasn't part of the agreement. It wasn't an objection. There is a sense that if you-I mean, it's in the government's interest to, once you decide, okay, three years is the time, or in any other 11C-1C play agreement. You want it to be binding. You want people to enter into these because it's something the government-it benefits the government not to have to try people and to have them serve a sentence that the government agrees is appropriate. So what happens if all of a sudden we permit judges to accept that kind of agreement and then add step to the sentence? Your Honor, I-and I framed the issue in the brief that it-counsel, the time to object to the condition would have been at the sentencing hearing. The counsel had ample opportunity. That condition was recommended in the pre-sentence investigation report prior to the sentencing hearing. So counsel had numerous opportunities prior to the hearing to object. Counsel did not. At the hearing when the court-when Judge Succo imposed the condition, counsel could have objected to it, and therefore applying the plain error standard, the government, the United States, believes no plain error was committed here. Well, do you agree there was an error? The United States would agree that that condition was not spelled out in the Rule 11C-1C. It was an error. It was an error. It was an error. Really, the two-the latter two prongs that Judge Pai has mentioned are the ones we have to be concerned with here, right? Yes, Your Honor. Whether there's substantial injustice and whether we should exercise our discretion to relieve the memory of the error, even though it wasn't objected to. That is correct, Your Honor. Those two things. Your Honor, I'm-I don't think I understood the question. I'm sorry. Well, so plain error. Okay. If there's plain error, like I just-I asked counsel, if there's plain error review, in order for him to prevail  Yes. I think that's what Judge Warlaw just went through. He's got to be an error. It's got to be plain, and I think that those two-to me, those two things seem to be satisfied. The difficult question is, does the imposition of 240 months of community service, does that affect her substantial rights? And even if it does affect her substantial rights, should we exercise our discretion to correct the error? Your Honor's- I posed that question to counsel because their blue brief doesn't really focus on that. The United States' position is that that does not seriously affect the fairness or integrity of the- Why not? As Judge Warlaw said, these plea agreements are designed to ensure certainty in the sentence. This particular sentence, at least with respect to Mr. Randolph, provided for a certain range of discretion, which was agreed to. And I guess with her as well, on the incarceration or non-incarceration, but it didn't say anything about community service. That is correct, Your Honors, but that condition was imposed. There's a statute that authorizes the imposition of that condition. Granted, it was not in the plea agreement. It was not spelled out in the plea agreement. And in an 11C1C plea, there's both reasons why the government wants to resolve the case in the manner it did, as well as the defendant. The government didn't say, and we want 240 months' worth of community service. It did not, Your Honor. That is correct. However- So where does the district court get the authority? Your Honor, the district court is sitting in a position that knows the case. The defendant, having gone over an extensive pre-sentence investigation report, and in looking at the pre-sentence investigation report, the defendant's nature, background, history, characteristics, it has the authority to- The district court judge could have said, look, I'm not satisfied with this plea agreement. I don't like it. I think it must be mandatory incarceration, and there needs to be some community service. Now, I'm not accepting the agreement without those changes. If you want to withdraw your plea, that's fine. Or you can agree to this. That's fine, too. It didn't happen here. No, you're right, Your Honor. The court did accept the 11C1C plea and did impose a condition. Granted, a condition that it has the authority to impose- It has the authority to do lots of things, but it wasn't authorized to do so by the agreement that it had previously accepted. There's lots of different- I mean, he could have gone through the Section 553A factors and decided three years wasn't enough. He wanted four. I mean, that would have been authorized under the statutes. Your Honor, and that reminds me of the-I believe it's the Mukay case or Mukai. In that case, the court-a condition was imposed, as I recall, in that case that was not contemplated in the 11C1C plea. Here, this condition did not extend the term of supervised release. You know, it does. I mean, if you have to do 240 hours of community service, you have to miss work if you're gainfully employed. I mean, it's not as though she's incarcerated. Yes, it's not as though she's having home detention. But it is a form of-you know, it impairs her freedom of movement and has an obligation to be somewhere that she might- not even just disargy, but it's-you know, maybe she has other commitments. I'm largely thinking of work. I don't know about family or anything. I mean, now that their scheme is over, I don't know where they're going to get it. Yes, Your Honor. Yes, Your Honor. The United States, that condition was not spelled out or agreed upon in the 11C1C plea. Are you really arguing-I mean, my question to Opposition Counsel really talked about the standard conditions, and now you've agreed with Judge Wardlaw that this is not a normal standard condition in this district. So you're really suggesting then that the district court can impose terms and conditions of probation in a Rule 11 agreement that have not been agreed to? We're talking terms and conditions of probation. Your Honor, my experience in the district has been that this condition is not a standard condition. I can't- I'm not aware of it being a standard condition in any district. And, however, it is not extending the term of supervised release, granted it's- I think Judge Wardlaw hit it on the head here, though, it adds a burden on the defendant. She's got something she's got to comply with. If she doesn't, do her 240 hours of community service. That is true. Well, you know, you want to serve a little more time in, you know, MDC. I don't know what it's called up here, but- Your Honors, that is correct. It does impose an additional condition on the defendant during her supervised release. However- I think your argument isn't really that you're in favor of that, of doing that as a general practice. It was more that he just didn't object, so it doesn't meet the plein air standards. That's my- Yes, Your Honor. Thank you. Well, you've reached your time. Thank you, Your Honor. Thank you. You're over your time. Thank you. And I promised you one minute. Thank you, Your Honor. We promised one minute to somebody. I want to make clear that I didn't have time to get to the extraordinary physical impairment, and I don't want to waive that by not addressing that here today. You have it. It's in your briefs. Thank you, Your Honor. The question why the guideline calculation, I think that any time that a district court judge has discretion in sentencing, you have to have the guideline calculation. Otherwise, you can't just say it's just a little bit of discretion in this case, so we don't have to do the calculation. As soon as the issue of discretion comes up, the calculation should be done. And here you have a case where there's no evidence of loss, and the judge is saying these are equitable. If there is no loss or if it's a small loss, it's an equitable circumstance. And in this case, an equitable circumstance to my client and to Mrs. Randach would be home detention. Thank you. All right. Thank you very much, counsel. United States v. Randach is submitted.
judges: Wardlaw, Paez, Smith N. R.